IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02631-SBP

A.B.,[1]

      Plaintiff,

v.

LELAND DUDEK,[2] Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      Plaintiff A.B., brings this action under Title II, 42 U.S.C. §§ 401 *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying his claim for disability insurance benefits ("DIB"). The court has carefully considered the administrative record, ECF No. 10 ("AR")[3], Plaintiff's brief, ECF No. 11 ("Brief"), the Commissioner's response, ECF No. 12 ("Response"),[4] and the applicable law. No hearing is necessary.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Leland Dudek is now the acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record.

[4] Plaintiff did not file a reply.

For the reasons below, the court **REVERSES** the Commissioner's decision and

**REMANDS** this case for further proceedings consistent with this Order.

## BACKGROUND

Plaintiff submitted his DIB application under Title II of the Act on May 17, 2019,

alleging a disability onset of June 2014. AR: 235-36. The agency denied Plaintiff's applications

on initial review, AR: 164-69, and again on reconsideration, AR: 172-84. Plaintiff then requested

a hearing, which was held in February 2021. AR: 39-72, 186-87. In February 2021, the ALJ

issued a decision finding Plaintiff was not disabled. AR: 13-37. After Plaintiff filed an appeal in

federal district court, the Commissioner voluntarily remanded the matter for consideration of a

physician's opinion not at issue in this current appeal. AR: 3104-06. The ALJ held another

hearing in February 2023, AR: 3028, and issued another unfavorable decision in March 2023,

which is the final decision for purposes of judicial review. AR: 2994-3022.

## DIB FRAMEWORK

A person is disabled within the meaning of the Act "only if his physical and/or mental

impairments preclude him from performing both his previous work and any other 'substantial

gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB,

2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the

mere existence of a severe impairment or combination of impairments does not require a finding

that an individual is disabled within the meaning of the Social Security Act. To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial gainful

activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232

(D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a

claimant is able to engage in substantial gainful activity requires more than a simple

determination that the claimant can find employment and that he can physically perform certain

jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a

significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D.

Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442

(10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process"

which guides the determination of whether an adult claimant meets the definition of disabled

under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v) (DIB evaluation of disability of

adults). If it can determine if the claimant is disabled or not at a step, the Commissioner makes

the determination and does not continue to the next step. § 404.1520(a)(4). However, if that

determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity."

§ 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . .

age, education, and work experience." §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or

combination of impairments under § 404.1509. *See* § 404.1520(a)(4)(ii). If the claimant does not

show "any impairment or combination of impairments which significantly limits [their] physical

or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age,

education, and work experience." § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed

impairment and "meets the duration requirement[.]" § 404.1520(a)(4)(iii). If so, the claimant is

3

disabled regardless of "age, education, and work experience." § 404.1520(d). If not, the

Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most

[the claimant] can still do despite [their] limitations." §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based

on their RFC. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s)

must prevent [them] from doing [their] past relevant work." § 404.1520(f). For guidance on this

determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*,

587 U.S. 97, 100 (2019) (citing §§ 404.1566(e), 416.966(e)). If the claimant's "severe

impairment" prevents them from doing their "past relevant work" or they have no "past relevant

work," the analysis continues to the final step. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors—

"age, education, and work experience." §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any other work

the claimant "can adjust to must exist in significant numbers in the national economy (either in

the region where [they] live or in several regions in the country)." § 404.1560(c)(1). The

Commissioner is "responsible for providing evidence that demonstrates that other work exists in

significant numbers in the national economy that [the claimant] can do, given [their] residual

functional capacity and vocational factors." § 404.1560(c)(2). If the claimant "can make an

adjustment to other work," they are "not disabled." § 404.1520(g).

The claimant has the burden of proof at steps one through four. The Commissioner bears

the burden of proof at step five to prove there is other work the claimant can perform. *Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not

shift the plaintiff's burden to prove his RFC. § 404.1560(c)(2) ("We are not responsible for

providing additional evidence about your residual functional capacity because we will use the

same residual functional capacity assessment that we used to determine if you can do your past

relevant work.").

## ALJ'S DECISION

Relevant to this appeal, the ALJ found at step two that Plaintiff had severe impairments

of asthma and recurrent sinusitis. AR: 3000. At step three, the ALJ found that Plaintiff's

symptoms did not meet or medically equal any Listing. AR: 3000-02. Between steps three and

four, the ALJ found that, due to Plaintiff's pulmonary impairments, he was limited to a reduced

range of light work that included no more than occasional exposure to extreme heat or cold or

concentrated pulmonary irritants. AR: 3002-04. The ALJ determined at step four that Plaintiff

could not perform any past work but found at step five that he retained the ability to perform

other work that existed in significant numbers in the national economy. AR: 3009-11.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether

the Commissioner applied the correct legal standards and whether the agency's factual findings

are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175

(10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout adminis-

trative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102

(quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-

evidence standard,

> a court looks to an existing administrative record and asks whether it contains suf-
> ficient evidence to support the agency's factual determinations. And whatever the
> meaning of "substantial" in other contacts, the threshold for such evidentiary

sufficiency is not high. Substantial evidence, this Court has said, is more than a
mere scintilla. It means—and means only—such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)

("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting

*U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence." *Zoltanski*,

372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the

agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the

court may not displace the Commissioner's choice between two fairly conflicting views, even if

the court would have made a different choice if the matter had been before it de novo). Even so,

this court must "meticulously examine the record as a whole, including anything that may under-

cut or detract from the ALJ's findings in order to determine if the substantiality test has been

met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d

1067, 1070 (10th Cir. 2007)). "A reviewing court must uphold even a decision of less than ideal

clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369

(2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth

Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*,

357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security

context 'where, based on material the ALJ did at least consider (just not properly), [it] could

confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff's sole assignment of error is that the ALJ failed to properly consider opinions from one of Plaintiff's medical providers, Dr. Gregory Downey.

## I.    Standards

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed his application in 2019—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. § 404.1520c.

An ALJ must "give consideration to all the medical opinions in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and articulate how persuasive she finds each medical source's opinion. § 404.1520c. The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. § 404.1520c(c). The regulations instruct that supportability and consistency "are the most important factors," and must be addressed. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency

factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). The ALJ "may, but [is] not required to," explain how he or she considered the other factors. *Id.*

The supportability factor considers whether the medical source's opinion is supported by "objective medical evidence" and "supporting explanations;" "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be." § 404.1520c(c)(1) (cleaned up). The consistency factor compares the medical source's opinion and "the evidence from other medical sources and nonmedical sources" in the record. § 404.1520c(c)(2). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Id.* (cleaned up).

Social Security regulations do not "prescribe the depth at which the ALJ must discuss" supportability and consistency. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). At a minimum, though, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022). And so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5

(10th Cir. Oct. 28, 2022)[5] (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

## II.    Application

Dr. Downey opined that Plaintiff could sit about two hours and stand and walk less than two hours in an eight-hour workday and would need breaks totaling two to three hours throughout the workday. AR: 2958. As Plaintiff points out, this is important because the inability to complete a full workday and being off task for more than 10 percent of a day renders an individual incapable of performing substantial gainful activity. Brief at 13 (citing SSR 96-8p, 1996 WL 374184, at *1) ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.")).

Dr. Downey began treating Plaintiff for Eosinophilic asthma in 2009 and provided his opinions in July 2020. *See* AR: 2956, 2959. He based his opinions on specific examination findings, including (1) a CT scan showing bilateral ground glass opacities and bronchial thickening (indications of potential respiratory conditions); (2) a pulmonary function test

---

[5] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

showing reversible airflow limitation; and (3) blood tests showing an abnormally high number of

a particular white blood cell and elevated antibodies. AR: 2956.

> In a very brief analysis, the ALJ found that Dr. Downey's opinions were not persuasive:

> Gregory P. Downey, MD offered an assessment regarding the claimant's pulmonary function in July 2020 (Exhibit B54F). His assessment limits the claimant to a severely reduced range of sedentary work inconsistent with the ability to engage in substantial gainful activity. While he cites to studies and other tests to support his assessment, they do not support the level of limitation indicated is necessary. Further, the opinion is not adequately consistent with the objective evidence of record, outlined above, that documents relatively minimal positive findings on a regular basis (Exhibits B17F, B18F, B26F, B29F, B42F, and B46F). Therefore, this opinion is not persuasive.

AR: 3008. The ALJ's reference to the "objective evidence of record, outlined above" seemingly

refers to the only other portion of her opinion that addressed Plaintiff's pulmonary conditions, in

which the ALJ stated:

> As for the claimant's asthma and recurrent sinusitis, the record shows he has received treatment for significant coughing, difficulty breathing, and other symptoms related to these impairments (Exhibits B17F, B18F, B26F, B29F, B42F, and B46F). However, examinations of the lungs typically document regular and unlabored respirations, lungs clear to auscultation bilaterally, and no evidence of rhonchi, rales, or wheezes, with few exceptions during rare and acute illnesses (Exhibits B17F, B18F, B26F, B29F, B42F, and B46F). Despite testifying that he is severely limited because of these impairments, he reported that his ability to exercise was "not limited by his pulmonary status" in December 2018 (Exhibit B18F, page 27). Pulmonary studies note reduced TGV and no significant response to bronchodilator, but no airflow limitation and normal TLC, RV and DLCO (Exhibits B18F, pages 131-158; and B42F, pages 36-40). For these reasons, his respiratory impairments are adequately accommodated by the pulmonary, environmental, and exertional restrictions described above.

AR: 3006. Plaintiff asserts that the ALJ's statement—"[w]hile [Dr. Downey] cites to studies and

other tests to support his assessment, they do not support the level of limitation indicated is

necessary"—fails to sufficiently articulate why Dr. Downey's opinions are not supported. The court agrees.

To recap, when addressing a medical opinion, an ALJ must assess the supportability and consistency of that opinion, but there is not a precise level of articulation at which an ALJ must discuss these two factors. At a minimum, though, an ALJ must "eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazer v. Kijakazi*, No. CV 20-1147 GBW, 2022 WL 682661, at \*5 (D.N.M. Mar. 8, 2022) (cleaned up).

In this case, Dr. Downey cited specific examination findings as the basis for his opinions. Yet, the ALJ failed to engage with Dr. Downey's opinions or the exam results he relied on with any degree of particularity. Instead, she stated in a wholly conclusory fashion that the clinical results Dr. Downey cited "do not support the level of limitation indicated is necessary." AR: 3008. Nor did the ALJ address other aspects of supportability, such as "whether the provider's treatment notes supported his opinion, the check-the-box format of his opinion, whether the provider examined plaintiff, and whether the provider explained how or why he reached his opinion." *See S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at \*3 (D. Kan. Sept. 26, 2022) (cleaned up). A lone conclusory sentence is insufficient for this court to sustain the ALJ's treatment of Dr. Downey's opinions. *See Frazer*, 2022 WL 682661, at \*5; *see also Guerin v. Saul*, No. 19-cv-02614-RBJ, 2020 WL 4435247, at \*8 (D. Colo. Aug. 3, 2020) ("Evidence is not substantial if it 'constitutes mere conclusion.'") (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

The Commissioner's attempts to buttress the ALJ's analysis do not alter this conclusion. It is the case that the ALJ did go on to say that Dr. Downey's opinions were not consistent with other evidence in the record, and the ALJ's record citations include some medical records from Dr. Downey. AR: 3008 (citing Exhibits B17F, B18F, B26F, B29F, B42F, B46F). But the ALJ cited entire swaths of medical records, totaling 550 pages, without any precision. As one court in this District remarked, "such generalized, global references to the record make the ALJ's opinion nearly impossible to review, and certainly do not constitute substantial evidence in support of the Commissioner's disability determination." *Gutierrez v. Colvin*, 67 F. Supp. 3d 1198, 1203 (D. Colo. 2014); *id.* (noting that the court was "neither required—nor, indeed, empowered—to parse through [166 pages of records] to find specific support for the ALJ's decision"); *see also Guerin*, 2020 WL 4435247, at *8 (citing *id.*).

Nor can the Commissioner salvage the ALJ's decision by citing specific pages of the record in his Response. These belated efforts border on a post hoc rationalization, as the ALJ should have provided specific citations herself, and her use of "general, global references" comes after the Appeals Council remanded Plaintiff's claim for her to

> [g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with *specific* references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).

AR: 3105 (emphasis added); *see Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (the court is "limited to evaluating the rationale offered by the ALJ to determine whether it conforms with the law and is supported by substantial evidence"); *see also J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *8 (D.

Colo. Aug. 7, 2023) ("[T]his evidence was not cited or discussed by the ALJ in her evaluation of Mr. Leeman's opinion, and the Court cannot 'adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.'") (quoting *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007)).

*        *        *

In sum, the court is unable to follow the ALJ's reasoning regarding the supportability of Dr. Downey's opinions. Thus, the court cannot conclude that the ALJ's treatment of Dr. Downey's opinions is supported by substantial evidence. Further, the government does not assert that this was harmless error, *see generally* Response, and the court sees no basis for reaching such a conclusion when Dr. Downey's opinions, if credited, would mean that Plaintiff is unable to engage in substantial gainful activity. *See J.T.L.*, 2023 WL 5017241, at *9 & n.15 (remanding when Commissioner did not argue that ALJ's failure to properly articulate the supportability of a provider's opinions was harmless error). Therefore, the only proper course is to remand this case yet again for further proceedings to allow the ALJ to reassess Dr. Downey's opinions and more fully explain how she considered the supportability and consistency of his opinions.

## CONCLUSION

Accordingly, the court respectfully **REVERSES** the Commissioner's decision denying A.B.'s application and **REMANDS** for further proceedings consistent with this Memorandum Opinion and Order.

DATED: March 12, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge